IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JAMES A. ELDRIDGE,
    Plaintiff,

vs.                                      Case No. 5:07cv125/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34.

       Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.      PROCEDURAL HISTORY

       This suit involves an application for DIB under Title II of the Act. Plaintiff's application was denied initially and on reconsideration (Tr. 14).[1] On January 26, 2007, following a hearing, an administrative law judge (ALJ) rendered a decision in which she found that Plaintiff was not under

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on August 13, 2007 (*see* Doc. 11).

a "disability" as defined in the Act (Tr. 14–20). On April 24, 2007, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 4–9). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.     FINDINGS OF THE ALJ

On January 26, 2007, the ALJ made several findings relative to the issues raised in this appeal (Tr. 14–20):

1) Plaintiff meets the insured status requirements of the Act through December 31, 2009.[2]

2) Plaintiff has not engaged in substantial gainful activity since July 1, 2004, the alleged onset date (20 C.F.R. §§ 404.1520(b) and 404.1571 *et seq.*).

3) Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, iron deficiency anemia, and malabsorption syndrome (20 C.F.R. § 404.1520(c)).

4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

5) Plaintiff has the residual functional capacity (RFC) for a range of light work activity. Plaintiff, however, cannot climb or work at heights, but he can occasionally balance, stoop, kneel, crouch, and crawl (20 C.F.R. § 404.1545).

6) Plaintiff is unable to perform any of his past relevant work (20 C.F.R. § 404.1565).

7) Plaintiff was born on April 14, 1951, and was 53 years old on the alleged disability onset date, which is defined as an individual closely approaching advanced age (20 C.F.R. § 404.1563).

8) Plaintiff is able to communicate in English and has a limited education (20 C.F.R. § 404.1564).

9) Plaintiff has acquired work skills from past relevant work (20 C.F.R. § 404.1568).

---

[2]Thus, the time frame relevant to this appeal is July 1, 2004 (alleged onset) to January 26, 2007 (date of ALJ's decision), although Plaintiff must establish disability on or before his date last insured, December 31, 2009 (*see* Tr. 14).

10) Considering Plaintiff's age, education, work experience, and RFC, he has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. §§ 404.1560(c), 404.1566, and 404.1568(d)).

11) Plaintiff has not been under a "disability," as defined in the Act, from July 1, 2004 through January 26, 2007, the date of the ALJ's decision (20 C.F.R. § 404.1520(g)).

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY[3]

    A.    Personal History

Plaintiff was born on April 14, 1951, and he reported having an eighth grade education (Tr. 118, 257). He has past relevant work as a roofer and a framer, and he last worked in July 2004 (Tr. 16, 258). He noted that he had fallen off a ladder and has been in constant pain since (Tr. 115). He alleged disability due to lupus,[4] back pain, chronic anemia, and depression. He testified at his hearing before the ALJ that his back, feet, and shoulders hurt all the time. A doctor has advised him that he has degenerative arthritis. Plaintiff stated that his back goes out, and when it does his left leg "goes" and just quits working. Plaintiff is tired all the time from the medications he takes. He also testified that he gets rashes on his elbows, hands, arms, and legs. Additionally, when Plaintiff is in the sun, he has flareups in his hands which make it hard to hold things. He testified that he has anxiety and depression for which he takes medication. His depression causes him to be tired and not care about anything. Regarding his daily activities, Plaintiff noted that does not cook, wash clothes, or sweep. He goes to church and his cousins's house on occasion. On an average day, Plaintiff sits in a recliner, watches television, and walks around the yard.

    B.    Relevant Medical History

Records from Plaintiff's treating physician, Dr. Salman, show that Plaintiff has been seen at the Gulf Coast Walk-In Clinic (Clinic) for complaints of lower back pain, iron deficiency anemia, and malabsorption syndrome. Plaintiff's iron deficiency anemia has been treated with medication. He has received conservative treatment for his complaints of back pain, including treatment with Flexeril. Magnetic resonance imaging (MRI) of the lumbar spine on November 9, 2004, showed mild degenerative changes at L3–L4 and L4–L5 and disc protrusion at L5–S1. Plaintiff has been diagnosed with anxiety and depression, for which he is prescribed Zoloft and Xanax (*see, e.g.*, Tr. 126).

    C.    Other Information Within Plaintiff's Claim File

---

[3]Unless otherwise noted, the information in this section is derived from the opinion of ALJ.

[4]The ALJ noted that Plaintiff referenced a diagnosis of systemic lupus erythematosus, but there are no medical records in the file supportive of the diagnosis; therefore, the ALJ concluded that it does not constitute a medically determinable impairment (Tr. 17). Plaintiff does not contest this finding (*see* Doc. 15).

In a physical consultative examination on November 17, 2004, Plaintiff was examined for complaints of back pain. On examination, Plaintiff moved without difficulty, and his manual dexterity was normal. He was 100% mobile on passive and active movement. Muscle bulk and muscle strength were normal. Deep tendon reflexes were positive, and straight leg raising test was negative. Plaintiff was able to tiptoe and heel walk. He bent his back to 90 degrees. The examiner, Dr. Kris Lewandowski, concluded that Plaintiff's physical examination did not reveal any significant abnormalities.

In a psychiatric consultative examination on November 22, 2004, Plaintiff reported that he had been taking Zoloft for about two years for anxiety attacks. He described these attacks as involving excessive worrying, sweaty hands, and heart palpitations. Plaintiff, however, noted that he "used to have anxiety attacks, but it got better since being on Zoloft" (Tr. 126) (emphasis added). Plaintiff also reported feeling depressed and sad, but he claimed that his symptoms are "pretty much under control" on Zoloft and Xanax (*id.*). Plaintiff was diagnosed with major depression, first episode. He was assigned a Global Assessment Functioning (GAF) score of 60, which was indicative of an individual who had moderate difficulty in social or occupational functioning. The examiner, D.K. Vijapura, M.D., noted that Plaintiff was responding to his antidepressants and anti-anxiety medications and concluded that Plaintiff's prognosis was good.

Althe Do, a State Agency medical consultant, completed a Physical RFC Assessment on December 2, 2004 (Tr. 143–50). Dr. Do opined that Plaintiff was able to frequently lift or carry ten pounds and occasionally lift or carry twenty pounds. He could stand, walk, or sit for six hours in an eight-hour workday (Tr. 144). His ability to push or pull was unlimited (*id.*). Plaintiff was able to occasionally climb, stoop, kneel, crouch, and crawl, but he could never balance (Tr. 145). No manipulative, visual, communicative, or environmental limitations were established (Tr. 146–47).

Another agency physician, Edward Holifield, M.D., completed a Physical RFC Assessment on February 23, 2005 (Tr. 220–27). According to Dr. Holifield, Plaintiff was able to lift or carry fifty pounds occasionally and twenty-five pounds frequently. He could sit, stand, or walk for six hours in an eight-hour workday (Tr. 221). His ability to push or pull was unlimited (*id.*). No postural, manipulative, visual, environmental, or communicative limitations were established (Tr. 222–24).     A vocational expert (VE) testified at Plaintiff's hearing. The VE was asked if any

occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and RFC as Plaintiff, and which would utilize the skills acquired in Plaintiff's past relevant work with minimal adjustment. The VE testified that representative occupations such an individual could perform include: Sales Representative of Building Equipment and Supplies (Dictionary of Occupational Titles (DOT) # 274.357-018), Specific Vocational Preparation level (SVP) 6, skilled, light; Contractor (DOT # 182.167-010), SVP 7, skilled, light; Material Lister (DOT # 229.387-010), SVP 5, skilled, sedentary; and Repair Order Clerk (DOT # 221.382-022), SVP 3, semiskilled, sedentary (*see* Tr. 278). When asked whether these jobs would be impacted if an individual could not climb or work at heights, the VE testified that the jobs of Sales Representative, Building Supplies and Equipment, and Contractor would be ruled out; however, an individual could still perform the jobs of Material Lister and Repair Order clerk.

V.  DISCUSSION

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ failed to comply with the Eleventh Circuit's pain standard in analyzing Plaintiff's complaints of pain (Doc. 15 at 1, 10–12). Second, Plaintiff contends the ALJ erred in failing to find his depression "severe" (*id.* at 2, 12–14).

   A.  Pain Standard

As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd.,

921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. Id.; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor v. Bowen, 786 F.2d at 1054; Holt, 921 F.2d at 1223. "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir.

Case No. 5:07cv125/RS/EMT

1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[5] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." Hand, 761 F.2d at 1548-49. It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

Initially, in the instant case Plaintiff admits that "the 11th circuit pain standard requirements were satisfied," but he asserts that the ALJ erred in not giving proper weight to [his] pain testimony (Doc. 15 at 12). Indeed, the ALJ specifically identified 20 C.F.R. § 404.1529 prior to analyzing Plaintiff's subjective complaints (Tr. 17). She then found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (*id.*). Immediately following this statement, the ALJ described Dr. Lewandowski's physical consultative examination of Plaintiff on November 17, 2004, which as noted *supra*, revealed no significant abnormalities (*see* Tr. 17–18, 122–25). In pertinent part, Dr. Lewandowski noted that Plaintiff's mood, affect, and communication skills were normal, and Plaintiff was alert, oriented, and cooperative (Tr. 122–23). Dr. Lewandowski also noted that Plaintiff's depression was being treated with Zoloft "which works" (Tr. 122). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted). Additionally, Dr. Lewandowski noted that Plaintiff's

---

[5]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

"chief complaint" was back pain (Tr. 122), and his examination therefore focused on this complaint of pain. Dr. Lewandowski first observed that Plaintiff was "in no visible distress," he was able to dress and undress himself, and he sat and walked without any problems (*id.*). Next, Plaintiff was physically examined, which revealed calluses on both of Plaintiff's hands (Tr. 122–23). This, according to Dr. Lewandowski, indicated a "serious amount of manual labor recently" (Tr. 123), which is significantly inconsistent with Plaintiff's allegations of very limited physical activity.[6] Dr. Lewandowski further noted that Plaintiff was "100% mobile on passive and active movement," and he had normal muscle strength and bulk, positive deep tendon reflexes, negative straight leg raising tests, and normal sensation to touch and pain (*id.*). Plaintiff appeared comfortable during the examination, he changed position without difficulty, and he could tiptoe and heel walk, bend his back ninety degrees, and stand on one extremity with good balance bilaterally (*id.*). Finally, Dr. Lewandowski noted that Plaintiff moved without difficulty and had normal manual dexterity (*id.*). Thus, although the ALJ could have articulated her reasoning more clearly, it is obvious to this court that she considered the results of Dr. Lewandowski's examination in discounting Plaintiff's complaints, as her description of his examination immediately follows her statement that Plaintiff was not fully credible (*see* Tr. 17–18). Moreover, the physical examination is indeed inconsistent with Plaintiff's allegations. Thus, the ALJ did not err in rejecting Plaintiff's complaints on this basis.

Next, the ALJ referenced the treatment received by Plaintiff at the Clinic, which includes his treatment by A.R. Salman, M.D. (*see* Tr. 18, 151–205). In pertinent part, the ALJ noted that Plaintiff had received only conservative treatment for his complaints of back pain, such as Flexeril, a muscle relaxant, and he had not been referred to physical therapy, pain management, or surgery (Tr. 18). Although most of the Clinic records pre-date Plaintiff's alleged onset of disability date (*see, e.g.,* Tr. 157–96, 198–99, 204–05), they document conservative care during that time for Plaintiff's back pain and other ailments (*see, e.g.*, Tr. 188 (Plaintiff prescribed Flexeril on August 21, 2002)). Similarly, the records from July 1, 2004, forward (Tr. 151–56, 197, 200–03, 231–44,

---

[6]Consistent with Dr. Lewandowski's belief in November 2004 (that Plaintiff was engaging in manual labor), a medical record dated February 24, 2004, reveals Plaintiff's report that he experienced pain when he tried to lift a 150-pound deer (Tr. 162).

248) document continued conservative care including medication (*see, e.g.*, Tr. 152 (Flexeril prescribed on October 13, 2004)). As the ALJ correctly observed, Plaintiff was not referred to pain management or physical therapy, and the record contains no evidence of surgery, a surgery recommendation, or treatment by a specialist. An ALJ may properly consider treatment that is "entirely conservative in nature" in discrediting a claimant's testimony. Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).

The ALJ next summarized the results of Plaintiff's MRI of September 9, 2004, which showed a disc protrusion at L5–S1 with impingement on the thecal sac and nerve roots, and mild degenerative changes at L3–4 and L4–5 (Tr. 18, 156). Plaintiff's intervertebral discs were otherwise normal, the vertebral bodies were "normal without fractures or dislocations," there was no evidence of spinal stenosis, and the conus medullaris was in normal position (Tr. 156). Similarly, x-rays of Plaintiff's lumbar spine taken on August 30, 2004, showed only mild degenerative changes with no fractures or dislocations, and unremarkable disc spaces and posterior elements (Tr. 155). Although not determinative of a claimant's credibility alone, an ALJ is permitted to consider the objective medical signs and laboratory findings, or lack thereof, when determining a claimant's credibility. *See* 20 C.F.R. § 404.1529(c).

Finally, the ALJ considered the reports of the State Agency physicians (*see* Tr. 18 (referring to Exhibits 4F and 7F, which are the Physical RFC Assessments of Drs. Do and Holifield)), as she was required to do. *See* 20 C.F.R. § 404.1527(f)(1) (evidence from non-examining sources must also be considered). The ALJ then noted that she was giving "some weight" to the opinion of Dr. Do, who provided opinions that were largely consistent with an ability to perform light work.[7] Notably, however, the ALJ rejected the opinion of Dr. Holified, as it was consistent with an ability

---

[7]Light work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

to perform work at a medium level of exertion, which, the ALJ found, is not consistent with the other evidence of record. In other words, in considering the opinions of the reviewing physicians, the ALJ adopted the <u>more restrictive</u> opinion regarding Plaintiff's physical abilities. While the court recognizes that generally the opinion of a nonexamining physician is entitled to little weight, and if contrary to the opinion of a treating physician, it is not good cause for disregarding the opinion of the treating physician. <u>Broughton v. Heckler</u>, 776 F.2d 960, 962 (11th Cir. 1985). Here, however, the ALJ gave one of the opinions only "some weight" in determining Plaintiff's RFC, and he accorded no weight to the other opinion. Moreover, the opinion credited by the ALJ is not inconsistent with the opinion of any treating physician, as no treating physician offered an opinion regarding Plaintiff's physical abilities or whether he would be restricted from performing work. *Cf.* <u>Singleton v. Astrue</u>, --- F. Supp. 2d ---, 2008 WL 859256, *10 (D. Del. March 31, 2008) (in evaluating a plaintiff's credibility, ALJ did not err in considering, among other factors, that "none of [p]laintiff's treating physicians identified any specific functional limitations arising from her fibromyalgia or other conditions that would render her totally disabled," and plaintiff had received only conservative, routine, care).

Thus, because the ALJ's opinion reveals the inconsistencies on which she relied in discrediting Plaintiff's subjective complaints, and because the ALJ's credibility finding is supported by substantial evidence on the record as a whole, the ALJ's credibility finding should be affirmed. *See* <u>Foote</u>, 67 F.3d at 1561–62.[8]

B.    Findings Regarding Plaintiff's Depression and Anxiety

At step two of the sequential evaluation, the ALJ found Plaintiff's depression non-severe (*see, e.g.*, Tr. 16). Plaintiff contends the ALJ erred in this regard.[9]

---

[8]In concluding that the reasons given by the ALJ for discounting Plaintiff's credibility are sufficient, the court notes that the ALJ's articulation on these points is only minimally acceptable. *See* <u>Cross v. Comm'r. of Social Security</u>, 373 F. Supp. 2d 724, 728 (N.D. Ohio 2005) (affirming the decision of the Commissioner, but noting that the ALJ's articulation "leaves much to be desired").

[9]Although the record contains evidence regarding Plaintiff's anxiety, Plaintiff appears to allege only that the ALJ erred in her consideration of Plaintiff's depression (*see, e.g.*, Doc. 15 at 12). Nevertheless, the court will also address the ALJ's finding that Plaintiff's anxiety was non-severe, as Plaintiff may contend he also raised this issue (*see, e.g.*, *id.* at 14).

Case No. 5:07cv125/RS/EMT

At step two, the issue is whether Plaintiff has shown that he has a condition which has more than "a minimal effect on his ability to: walk, stand, sit, lift, push, pull, reach, carry, or handle, etc." Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir.1985) (relying on 20 C.F.R. § 404.1521). "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Plaintiff has the burden of proof at step two. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986)

"[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). "Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 n.9 (11th Cir. 1987), quoting Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985). It also has been characterized by the Supreme Court as a criterion which identifies "at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into consideration." Stratton, 827 F.2d at 1452 n.9 (quoting Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987)).

Here, the ALJ noted the results of Plaintiff's psychiatric consultative examination on November 22, 2004, where Plaintiff reported to Dr. Vijapura that he had been feeling depressed and having anxiety attacks, but Plaintiff advised that his symptoms were well controlled on medications (Tr. 16). Plaintiff takes issue with the ALJ's characterization, asserting that Dr. Vijapura did not state that Plaintiff's symptoms were "well controlled" (Doc. 15 at 13). A review of Dr Vijapura's report reveals the following prognosis: "Patient is responding to medications like antidepressants

and antianxiety agents. Thus, his prognosis is good." (Tr. 128). The body of Dr. Vijapura's report states that since being placed on medications Plaintiff's "symptoms are pretty much under control" (Tr. 126). Thus, while the ALJ did not precisely quote the opinion of Dr. Vijapura, the undersigned concludes that this is a distinction without a difference, especially considering that the ALJ additionally stated that Dr. Vijapura "noted that [Plaintiff] was responding to his antidepressants . . . and concluded that [Plaintiff's] prognosis was good" (Tr. 17). It is clear from a review of the entire report that Dr. Vijapura believed that Plaintiff's symptoms were under control, or could be controlled with the use of medication, and the ALJ did not err in reaching the same, general, conclusions. Indeed, Plaintiff specifically reported to Dr. Vijapura that "he used to have anxiety attacks, but it got better since being on Zoloft" (Tr. 126). Plaintiff made a similar report during his hearing before the ALJ, testifying that he can end an anxiety attack by taking Xanax (*see* Tr. 265). Moreover, Dr. Vijapura's report suggests that if Plaintiff was limited from working, it would be due to back pain, not anything related to his depression or anxiety (*see* Tr. 128). Furthermore, Dr. Vijapura's report notes that Plaintiff has never seen a psychiatrist or counselor for his depression or anxiety (Tr. 126). A claimant's failure to seek treatment is a proper factor for the ALJ to consider, *see* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for ALJ to consider use of pain-killers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing). Moreover, absence of treatment indicates that a mental impairment is non-severe. *See, e.g.*, Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992). Thus, Dr. Vijapura's opinions are consistent with the conclusions of the ALJ that Plaintiff's depression and anxiety were not severe.

Next, in finding Plaintiff's anxiety and depression non-severe, the ALJ correctly noted "[w]hile the record documents complaints of anxiety [and] depression . . . no functional limitations are established in conjunction with these conditions" (Tr. 16). This comment is supported by the record (with the exception of the GAF score assessed by Dr. Vijapura, which for reasons discussed *infra*, was not binding on the ALJ). Indeed Dr. Salman, the physician who prescribed antidepressant and antianxiety medications to Plaintiff, did not opine that Plaintiff was functionally limited by his depression or anxiety.

Finally, the court notes that the diagnoses of anxiety and depression alone are insufficient to establish severity at step two. *See, e.g.*, Salles v. Comm'r. of Social Security, 229 Fed. Appx. 140, 145 (3d Cir. 2007) (diagnoses alone, including diagnosis of depression, insufficient to establish severity at step two). Plaintiff must present evidence demonstrating that the conditions significantly limited his ability to do basic work activities or impaired his capacity to cope with the mental demands of working. *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a); *see also* Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004); Salles, 229 Fed. Appx. at 145. Plaintiff failed to carry his burden.

In a related argument regarding Dr. Vijapura, Plaintiff notes that he was assessed with a GAF score of 60 by Dr. Vijapura, which is indicative of moderate difficulties in social or occupational functioning, but the ALJ "followed the opinion of two reviewing physicians who stated that [Plaintiff] has only mild limitations," and the ALJ erred by failing to include "moderate limitations" in the hypothetical questions presented to the VE (Doc. 15 at 13–14). Although Dr. Vijapura opined that Plaintiff's GAF was 60, he set forth no functional limitations related to Plaintiff's depression or anxiety; indeed, as previously noted, Dr. Vijapura opined that any limitations would be a result of Plaintiff's physical condition, not his mental condition (*see* Tr. 128). Moreover, Dr. Vijapura stated that Plaintiff's prognosis regarding his depression and anxiety was good, Plaintiff had no evidence of psychotic symptoms, he displayed good attention and concentration, and he was responding positively to medications (Tr. 127–28). Additionally, GAF scores are not dispositive of the issue of disability, which is reserved to the Commissioner. *See* SSR 96-5p. The Diagnostic and Statistical Manual of Mental Disorders (DSMM) states that the GAF Scale is used to report the clinician's opinion as to an individual's level of functioning with regard to psychological, social, and occupational functioning. *See* DSMM 30 (4th ed. 1994). Thus, the score takes into account non-impairment related functioning in addition to the effects of Plaintiff's impairment. The GAF scale is intended to be used to make treatment decisions, *id.* at 32, and nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score. *See* Howard v. Comm'r. of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score may assist ALJ in formulating claimant's RFC but is not essential, and failure to reference GAF score in the RFC does not make the RFC inaccurate). In this case, the ALJ properly gave greater weight to the narrative findings in Dr. Vijapura's report, which clearly do not

support the presence of significant mental-related limitations. Thus, the ALJ did not err in failing to find that Plaintiff has "moderate" mental limitations or in failing to include "moderate" mental limitations in her hypothetical questions to the VE.

In sum, the court concludes that the ALJ's findings regarding Plaintiff's depression and anxiety are supported by substantial evidence. While there is evidence that Plaintiff had a history of these conditions that were treated with medication, there is no evidence that they had more than a minimal effect upon his ability to work. Plaintiff failed to meet his burden of proof at step two, and correspondingly, the ALJ properly determined that Plaintiff did not have a severe mental impairment.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 14th day of May 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**